## REYNOLDS *v*. JOHNSON.

Decided April 25, 1891.

1. *Fraud—Mistake.*

   An overstatement of the amount of the debt secured by a mortgage, if made by mistake, is not fraudulent.

2. *Mortgage—Power of sale—Fraud.*

   A provision in a mortgage authorizing the mortgagee to sell the property, either at " wholesale or retail, as soon as possible consistent with the most profitable disposition that can be made," is not *per se* fraudulent, as putting the property out of the reach of creditors for an indefinite time.

3. *Partnership property—Individual debts.*

   An insolvent firm may mortgage their partnership property to secure individual, in preference to partnership, debts.

APPEAL from *Washington* Circuit Court.

O. W. WATKINS, Special Judge.

*Winchester & Bryant* for appellants.

1. The damages awarded are excessive, for more than were proved.

2. A firm cannot appropriate firm assets to the payment of individual debts, to the injury of firm creditors. Bump, Fr. Conv., p. 389, and notes 2 and 3, and pp. 229-230; 24 Ark., 16., 222; 31 *id.*, 666; *ib.*, 314; Bigelow, Fraud, 476-478.

3. The mortgage was vicious on its face. It puts the property out of the reach of creditors for an indefinite time. Bigelow, Fraud, Vol. 2, 296; 21 N. Y., 168–9; 13 *id.*, 215–20; 2 Bigelow, Fraud, 299, note 3, 306–8, note 1; 8 Md., 418; 2 Kent, Com., 533.

*T. M. Gunter* for appellee.

1. The mere preference of individual debts, by mortgage to secure them, over partnership debts is not such a fraud upon partnership creditors that a court of equity will set it aside. Jones, Ch. Mortg., sec. 44; 20 N. J. Eq., 13; 23 Hun (N. Y.), 494. But all these debts were assumed by the firm, and hence were partnership debts.

2. The mere overstating the debt by mistake was not even a circumstance to show fraud. Jones, Ch. Mortg., 339; 7 N. W. Rep., 300.

3. Creditors may proceed to collect their demands from the property if its value exceeds the amount secured by the mortgage, without waiting for the party who holds the mortgage to cause a sale. Bump, Fr. Conv., 39–60; Jones, Ch. Mortg., sec. 354; 31 Ark., 429.

HUGHES, J. This is an appeal from a judgment in favor of appellee in a suit upon a bond of indemnity executed by appellants to a constable, who, at the instance of appellants, levied an execution on a stock of goods as the property of the firm of Johnson Bros., which was composed of T. B. and J. F. Johnson. The goods were, at the time of the levy, in the possession of the appellee, and were claimed and held by him under a mortgage executed by said firm to him. They were sold to satisfy the execution in favor of appellants, and the appellee recovered a judgment for $200 damages.

1. Mistake as to amount of debt.
The mortgage was for $200, while the real amount of appellee's demand was only $180. It is contended that this was evidence of fraud. Unexplained it would be, but it was shown that the real amount of the indebtedness of Johnson Bros. to appellee was not known at the time, and

that the amount was fixed in the mortgage at $200, to cover what was due. If the amount was overstated by mistake, this was not evidence of fraud. Jones on Chattel Mortgages, 339; *Kalk* v. *Fielding*, 7 N. W., 300.

The mortgage provided: "Now the said party of the second part [appellee] is to take possession and control of said goods and convert the same into cash, either at wholesale or retail, as soon as possible, consistent with the most profitable disposition that can be, under the circumstances, made in the premises." It is contended that the effect of this clause was to put the property out of the reach of creditors for an indefinite time, and that as against them it was fraudulent. Such a provision is not fraudulent *per se*, but only evidence of fraud to be left to a jury. *Marks* v. *Hill*, 15 Gratt., 400; *Williams* v. *Lord*, 75 Va., 390; *Cunningham* v. *Freeborn*, 11 Wend. (N. Y.), 241; *Woodward* v. *Marshall*, 22 Pick., 468; 2 Bigelow on Fraud, p. 299, n. 4, and cases.

2. Power of sale.

The evidence tended to show that the debts, which the mortgage was made to secure, were in part debts of the firm of Johnson Bros. and in part the individual debts of members of the firm. It is contended that the firm could not appropriate the partnership property to the payment of the individual debts of members of the firm, in preference to partnership debts.

3. Mortgage of firm property for individual debts.

Bump on Fraudulent Conveyances, p. 389, does indeed lay down the rule broadly that "An appropriation of firm property to pay the individual debts of one of the partners, is, in effect, a gift from the firm to the partner, and the attempt to assign partnership property to pay the private debts of one of the partners, before the firm debts are paid, when the firm is insolvent, affords a conclusive presumption of an actual fraudulent design on the part of the debtors." See authorities referred to in note 2 to said page. A majority of adjudicated cases on this question, outside of this State, perhaps sustain the rule as laid down by Mr. Bump.

But the court laid down a different rule upon this question in *Jones* v. *Fletcher*, 42 Ark., 423, adhering to the doc-

trine of the Supreme Court of the United States in *Case* v. *Beauregard*, 99 U. S., 119, where it is held in effect that the right of a creditor of a partnership to have the partnership property applied to the payment of partnership debts, in preference to those of an individual partner, is not a lien or trust, but an equity derived from the partners, enforcible and made effective, not in the right of the creditor, but only through the equity of the individual partner, to which the creditor is practically subrogated. It cannot be enforced by the creditor, if the partner is not in a condition to enforce it. If, before the claim of the creditor is sought to be enforced by the creation of a trust in some mode, " the property has ceased to belong to the partnership, if by a *bona fide* transfer it has become the several property, either of one partner or a third person, the equities of the partners are extinguished, and consequently the derivative equities of the creditors are at an end."

It is held in the *Carver Gin Company* v. *Bannon*, 85 Tenn., 712, that " the general creditors of a firm have no lien upon the partnership assets, if the partners themselves have none. The claim of the firm creditors must be worked out through the equities of the partners. And a joint conveyance by partners of their partnership property in trust to secure their individual debts operates to defeat their own lien or equity thereon, and, *a fortiori*, that of the firm creditors, and gives priority of satisfaction out of the assets conveyed to the individual creditors." In *National Bank* v. *Sprague*, 20 New Jersey Chancery, 13, it is held: " Partners have the power, while the partnership assets remain under their control, to appropriate any part of them to pay or secure their individual debts. A mortgage given by them to secure individual debts fairly due is not rendered void by the mere fact that it operates to give individual debts a preference over demands against the firm ; nor will such mortgage be set aside for that reason by a court of equity, unless, perhaps, when created in contemplation of insolvency to give an improper preference."

The mortgage in the case at bar was not found to have been fraudulently made; hence it follows that the fact that it conveyed partnership property to secure the payment of an individual debt of one of the partners, did not render it invalid, though the partnership was at the time of the conveyance insolvent.

We find that the judgment in this case should have been for only $180. If the appellee elect to enter a *remittitur* for $20, the judgment is affirmed; but otherwise it is reversed on account of the $20 excess in the damages, which it appears the plaintiff below intended to, but did not, remit.